UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C. JAY SMITH,<br><br>    Plaintiff,<br><br>v.<br><br>RALPH DIAZ, et al.,<br><br>    Defendants. | Case No. 20-cv-04335-HSG<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 43 |

Plaintiff C. Jay Smith filed this § 1983 action on June 29, 2020. Plaintiff brings the following § 1983 claims: (1) an Eighth Amendment claim against Defendants Diaz and Davis for failure to protect (*see* Dkt. No. 41, First Amended Complaint ("FAC") ¶¶ 192-199); (2) a Fourteenth Amendment claim against Defendants Duke, Haub, Bloise, and Taylor for a violation of equal protection based on gender or transgender status (*see id*. ¶¶ 200-208); (3) a Fourteenth Amendment claim against Defendants Feston, Haub, and Bloise for a violation of due process (*see id*. ¶¶ 209-214); and (4) a Fourteenth Amendment claim against Defendants Duke, Haub, Bloise, Franco, and Taylor for retaliation based on Plaintiff's complaint under the Prison Rape Elimination Act ("PREA") (*see id*. ¶¶ 215-220).

Defendants Diaz and Davis previously moved to dismiss certain claims brought by Plaintiff (*see* Dkt. No. 25, Motion to Dismiss), and the Court granted that motion with leave to amend with respect to Plaintiff's Eighth Amendment claim. *See* Dkt. No. 38, Order Granting in Part and Denying in Part Defendants' Motion to Dismiss, at 4. On April 29, 2022, Plaintiff filed the FAC. *See* Dkt. No. 41.

Pending before the Court is the renewed motion to dismiss Plaintiff's Eighth Amendment claim filed by Defendants Diaz and Davis, Dkt. No. 43, which the Court **DENIES**.

**I.     BACKGROUND**

The FAC alleges the following facts.

Plaintiff C. Jay Smith is an incarcerated transgender woman currently serving a 25 years-to-life sentence with the possibility of parole. FAC ¶ 1. Ms. Smith's incarceration at San Quentin State Prison began in 2013 and ended in 2019. *Id*. ¶ 31. Defendant Diaz was the Secretary of the California Department of Corrections and Rehabilitation ("CDCR"), and Defendant Davis was the Warden of San Quentin, during the relevant period. *Id*. ¶¶ 18, 19. Defendant Davis has authority over San Quentin, has supervisory authority over correctional staff, and has authority to oversee, review, and approve investigations. *Id*.

While incarcerated at San Quentin, Plaintiff was "the victim of numerous acts of assault, discrimination, harassment, and threats of retaliation related to her gender expression and identity by other people in custody and by CDCR employees." *Id*. ¶ 34. Plaintiff alleges that these attacks were the result of the failure by San Quentin and CDCR to implement provisions of PREA, a federal law intended to deter the sexual assault of incarcerated people. *Id*. ¶¶ 162, 192-199. Plaintiff alleges that Diaz and Davis knew of and perpetuated a culture of permitting sexual harassment and assault to continue by failing to implement PREA rules intended to protect transgender people in custody. *Id*. ¶ 152. Plaintiff alleges that Diaz and Davis, in their respective roles, were aware or should have been aware that their failure to implement trans-specific PREA rules, in particular for transgender women in men's prisons, puts those women in danger. *Id*. ¶ 162. Plaintiff contends that the most recent PREA audit of San Quentin shows that it failed to implement PREA rules designed to protect transgender women, including Plaintiff. *Id*.

Plaintiff alleges that Warden Davis, in particular, was not only aware of the PREA research findings, but also had knowledge of threats against transgender inmates due to his attendance at Institution Advisory Committee ("IAC") meetings where Plaintiff or another transgender inmate raised concerns about showering privacy. *Id*. ¶¶ 8, 54. In addition, Davis served as chair of the Institutional PREA Review Committee ("IPRC"), which was responsible for investigating incidents, examining the area of the facility where the incident occurred, preparing a report and recommendation, and developing a plan to correct problems. *Id*. ¶ 165. PREA Rule §

2

115.86 and CDCR DOM § 54040.17 required establishment of the IPRC. *Id*. The chair is the final decisionmaker. *Id*.

Plaintiff alleges that Diaz and Davis were "or would have been made aware of San Quentin's shower-related PREA violations through the IPRC annual data collection and reports about San Quentin's PREA compliance." *Id*. ¶ 167. Per the 2020 PREA Audit Report, San Quentin, under Davis' leadership, collects data regarding the effectiveness of its sexual violence prevention policies. *Id*. ¶ 168. Annual PREA Reports made clear that privacy or modesty screens were needed to mitigate cross gender viewing issues. *Id*. ¶ 170. Davis' role on the IPRC required him to review complaints and assess the areas involved in the complaints and report PREA noncompliance issues to Diaz. *Id*. ¶¶ 165, 194. Plaintiff alleges that Diaz and Davis "failed to implement PREA screening, search, housing, and shower precautions for transgender people in custody[.]" *Id*. ¶ 196.

Plaintiff further alleges that Diaz and Davis' failures and inaction with regard to known constitutional violations were the moving force behind the deprivation of her constitutional rights. *Id*. ¶ 197. Plaintiff alleges that Diaz and Davis exhibited deliberate indifference by failing to comply with and implement the PREA rules. *Id*. ¶ 198.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the plausibility of a complaint, courts "accept factual allegations in the

3

complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). The Court also need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. *Sprewell*, 266 F.3d at 988.

## III. DISCUSSION

To state a § 1983 claim under the Eighth Amendment against prison officials, Plaintiff must plausibly allege that (1) the deprivation alleged is, objectively, sufficiently serious and (2) the prison official is, subjectively, deliberately indifferent to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A prison official exhibits deliberate indifference when the official knows of and disregards a substantial risk of serious harm to inmate health or safety. *Id.* at 837 (holding that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference").

Section 1983 liability for a supervisory prison official attaches "only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is 'a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013). "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." *Id*. (alteration adopted, internal citations and quotations omitted). With regard to showing moving force, "[t]he plaintiff's burden is to establish that the injury would have been avoided had proper policies been implemented." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1190 (9th Cir. 2006) (internal citations and quotations omitted).

4

Plaintiff's first claim alleges under § 1983 that Secretary Diaz and Warden Davis violated the Eighth Amendment by failing to implement PREA Rules, resulting in conditions creating an increased risk of sexual assault and harassment, which Plaintiff then suffered. Defendants argue that Plaintiff's allegations against Diaz and Davis again fail to support the inference that either of them acted with deliberate indifference to the harm Plaintiff claims. Assessing whether the allegations against each Defendant plausibly meet that standard, the Court finds that the FAC sufficiently cures the pleading deficiencies identified in its prior order granting partial dismissal.

### A. Warden Davis

In the FAC, Plaintiff contends that Davis was aware of the risk of the harms alleged based on his professional responsibilities and attendance at meetings where concerns were raised. *See* FAC ¶¶ 193-195. Two allegations are central to this theory. First, Davis, as chair of the IPRC, was required to review complaints and assess areas for improvement with regard to PREA noncompliance issues. *Id.* ¶¶ 19, 168, 194. Second, Davis was at meetings in 2018 and 2019 where Plaintiff or another transgender inmate presented complaints about the lack of privacy and resulting sexual harassment in the showers. *Id.* ¶¶ 8, 54, 178, 180.

The Court finds, taking these allegations as true as it must at this stage, that Plaintiff has plausibly alleged that Warden Davis directly knew of and disregarded an excessive risk to inmate safety. Plaintiffs allege that Davis failed to implement policies that would curb such violence despite San Quentin having failed PREA audits and being required to take corrective action. *Id.* ¶ 197.[1] The FAC also alleges that Davis had knowledge of the risks to transgender inmates based on his review of IPRC data. *Id.* ¶ 165. And the Court finds especially pertinent the FAC's allegation that Davis attended at least two meetings at which transgender inmates, including Plaintiff, expressed safety concerns based on San Quentin's implementation of shower privacy policies. *Id.* ¶¶ 8, 54, 178, 180.

---

[1] Defendants' invitation to the Court to consider audit reports not attached to the complaint, made for the purpose of undermining Plaintiff's allegations and unaccompanied by any request for judicial notice or incorporation by reference, is improper at this stage. *See* Reply at 2, n.2; 5, n.3; *see also United States v. Ritchie*, 342 F.3d 903, 907-909 (describing exceptions to the general rule that 12(b)(6) motions are limited to the face of the pleadings as limited to i) incorporation by reference and ii) judicial notice).

Defendants argue that the allegations do not plausibly allege that Davis was deliberately indifferent to a risk of constitutional harm, or that there was a causal connection between his actions and Plaintiff's alleged injury. *See* Dkt. No. 43, Motion to Dismiss ("Mot.") at 8-9. Defendants argue that the fact that "transgender women [were permitted] to shower separately from other people in custody[]" shows that Defendants were not deliberately indifferent. *See id*. at 9. But while that argument may or may not eventually have merit as a factual matter, at this stage the allegations are sufficient when taken as true. Plaintiff plausibly pleads that the lack of privacy was a serious harm, alleging, for example, that when another IAC representative reported the problem to the lieutenant assigned to the showering area, he replied that he would report the problem after she was raped. *See* FAC ¶ 176. Moreover, Plaintiff alleges that she has "been forced to shower with dozens of men in custody or in direct view of other people in custody." FAC ¶ 174. Plaintiff further alleges that officials at San Quentin reversed the policy of permitting "separate shower times for all transgender women or allow[ed] men in custody out of their cells during the time allotted for transgender women to shower." FAC ¶ 182. The FAC alleges that the U.S. Department of Justice's PREA rules protect transgender inmates not just from having to shower *with* people of the opposite gender, but also from having to shower where "nonmedical staff of the opposite gender" are able to "*view[]*" their private parts. FAC ¶¶ 5-6, 148 (emphasis added). According to the FAC, CDCR's policy precluding viewing only by people of the "opposite biological sex" during showering violates the PREA rules framed in terms of "opposite gender," and thus discriminates against transgender inmates. *Id.* at ¶ 148.[2]

At the pleading stage, all of these allegations are enough to establish an objectively serious harm: creation of an environment that both violates the privacy rights of transgender inmates and subjects them to increased risk of sexual assault, harassment or stalking. And they also plausibly

---

[2] Throughout their briefs, Defendants essentially quarrel with the substantive accuracy of the allegations. *See* Mot. at 8 (arguing that Plaintiff's allegation that CDCR and San Quentin failed PREA audits "is contradicted by the 2019 San Quentin PREA Report that is available online"); Reply at 2 (asserting that "the factual allegations regarding the availability of shower privacy are vague and not entirely accurate"), 4 (taking issue with Plaintiff's characterization of contents of audits as a factual matter). But the resolution of factual disputes of this sort is not proper at the motion to dismiss stage.

6

allege that Warden Davis was sufficiently aware of this risk but failed to take the appropriate corrective actions required by the law, thereby disregarding the risk of harm to Plaintiff. *See* FAC ¶ 198. *See McCurty v. Madsen*, No. 21-CV-05435-YGR, 2021 WL 5998440, at *3 (N.D. Cal. Dec. 20, 2021) (finding cognizable claim against warden based on sexually abusive pat-down policy, where complaint alleged that "this type of conduct has been pervasive at [the prison] and that defendant [warden] 'knew of the violations and failed to act to prevent them'") (*quoting Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989); *Osegueda v. Stanislaus Cnty. Pub. Safety Ctr.*, No. 1:16-CV-1218-LJO-BAM, 2017 WL 1348943, at *14 (E.D. Cal. Apr. 11, 2017) (denying motion to dismiss county sheriff where complaint alleged that he was responsible for conditions in housing unit, and had been made "'personally aware' of conditions and deprivations in [the unit] through meetings with the Stanislaus County Criminal Defense Bar"); *cf. Jercich v. California Dep't of Corr. & Rehab.*, No. 1:18-cv-00032-LJO-EPG-PC, 2019 WL 3231242, at *8 (E.D. Cal. July 18, 2019), *report and recommendation adopted*, No. 1:18-cv-00032-LJO-EPG (PC), 2019 WL 4054006 (E.D. Cal. Aug. 28, 2019) (dismissing constitutional claim against warden where there were "no allegations demonstrating that [warden] had notice of abuses or violations").

Because the FAC adequately alleges direct deliberate indifference liability on Warden Davis' part, the Court need not further consider whether the theories applicable only to supervisory liability are also adequately pled.[3]

### B.    Secretary Diaz

Because Diaz is not alleged to have been personally involved in the events giving rise to the alleged harm Plaintiff suffered, Plaintiff must show that he "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and [was] the moving force of a constitutional violation." *Crowley*, 734 F.3d at 977 (internal quotations and citation omitted).

While it is a close call, the Court finds that accepting the allegations against Secretary Diaz as true, Plaintiff has plausibly alleged an Eighth Amendment violation at this stage. In contrast to

---

[3] Even if the FAC did not adequately plead direct deliberate indifference liability on Defendant Davis' part, the Court concludes that these same facts are sufficient at this stage to plead supervisory liability based on his implementation of the challenged policy, for the same reasons discussed below with respect to Defendant Diaz.

1    the allegations regarding Warden Davis, Plaintiff does not allege that Secretary Diaz was directly
2    responsible for reviewing complaints and assessing areas for improvement with regard to PREA
3    noncompliance issues, or that he was personally present at meetings where Plaintiff and another
4    transgender inmate raised concerns about inadequate shower privacy at San Quentin.  Instead,
5    while the FAC (and Plaintiff's opposition) attempt to lump Davis and Diaz together in a manner
6    not backed up by specific factual allegations regarding Diaz, the viability of the claim against him
7    comes down to whether the PREA shower privacy policies as alleged were so deficient as to
8    themselves violate the Eighth Amendment.  The Court finds that while the facts pled in support of
9    this theory are not overwhelming, Plaintiff has alleged enough to proceed at this stage.

### 1. Deficiency

Significantly, Plaintiff alleges that CDCR's shower privacy policy is legally deficient on its face because it differs in a key respect from the provisions of the Department of Justice's PREA Rules:

> PREA Rule § 115.15(d) requires CDCR facilities to "implement policies and procedures that enable people in custody to shower, perform bodily functions and change clothing without nonmedical staff of the opposite gender viewing their breasts, buttocks, or genitalia, except in exigent circumstances or when such viewing is incidental to routine cell checks.  Despite the inclusive language in the federal PREA rules that allows transgender people the same dignity as their cisgender peers, CDCR's policies and procedures relating to this PREA mandate explicitly removes the term **"opposite gender"** under the federal PREA rules and replaces it with **"opposite biological sex"** in the CDCR DOM—[a] term that is not defined in PREA, California law or in CDCR policies and procedures.

FAC ¶ 148 (emphasis in original).  Plaintiff thus alleges that "because of CDCR's 'opposite biological sex' policy, transgender women at San Quentin, including Plaintiff, were forced to shower with and/or in the view of men." Opp. at 11 (citing FAC ¶¶ 53, 172, 174).  Plaintiff further contends that this deficiency allowed another inmate to observe her in the shower, which resulted in him stalking and harassing her there and elsewhere.  FAC ¶¶ 50-58, 62, 66.  The FAC alleges that this deficiency was identified in PREA reports in 2016, 2107, 2018, 2019 and 2020, and that Secretary Diaz was responsible for approving and publishing these annual reports.  *Id.* ¶ 18, 158-160.  The FAC alleges that the 2021 PREA audit conducted by the federal government

8

also identified this deficiency. *Id.* ¶ 161 (quoting finding with respect to West Block, where Plaintiff alleges she was stalked and harassed, that "there were shower and toilet areas that were identified during the on-site review that allowed opposite gender views and could not be remedied prior to the issuance of the interim report").

The FAC alleges that "[a]s Secretary, Defendant Diaz had ultimate responsibility and authority for the operation of CDCR, including the administration and implementation of CDCR's policies and procedures," FAC ¶ 18. The FAC further alleges that CDCR's official written policies and procedures differ from the PREA Rules in a way that systematically discriminates against transgender inmates and undermines their dignity and safety. *Id.* ¶¶ 147-148. At this stage, these allegations sufficiently plead a deficient policy and enough of a connection to Secretary Diaz to warrant the case proceeding against him. *See Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1447 (9th Cir. 1991) (reversing directed verdict in favor of county sheriff where jury could have found that he "acquiesced in a deficient policy that was a moving force behind [plaintiff's] rape and that repudiated [plaintiff's] constitutional right to personal security"), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994), *as recognized in Perez v. Cox*, 788 Fed. Appx. 438 (9th Cir. 2019); *cf. Garcia v. Cate*, No. ED CV 13-1610-JFW (MAN), 2015 WL 5998607, at *11 (C.D. Cal. June 4, 2015), *report and recommendation adopted*, No. ED CV 13-01610-JFW (DFM), 2015 WL 5971550 (C.D. Cal. Oct. 13, 2015) (dismissing supervisory liability claim against CDCR Secretary based on apparently unwritten "boots on the ground" policy regarding response to security alarms).

### 2. Moving Force

Defendants primarily argue that Plaintiff's allegations do not "establish a causal connection between" Secretary Diaz's alleged failure to appropriately implement PREA policies and the constitutional harm suffered by Plaintiff, such that the "moving force" requirement is not met. *See* Mot. at 9-10. Defendants characterize Plaintiff's allegation that she would not have been subjected to harassment, stalking, or assault by her attacker if PREA rules had been implemented at San Quentin as "speculat[ion]." *Id.* at 9.

The Court finds that taking the allegations as true, Plaintiff pleads a sufficient causal

connection between Defendants' alleged failure to implement adequate PREA policies and her alleged injury (stalking and harassment in the showers and elsewhere). The FAC plausibly alleges at length that PREA, and in particular its associated rules relating to shower privacy, are based on the premise that cross-gender showering and observation pose a risk to both the dignity and the safety of transgender inmates. *See* FAC ¶¶ 162, 170, 172, 174-182. In particular, the FAC quotes a report prepared in 2020 by the California Inspector General's Office that "devotes an entire section to the dangers faced by transgender, nonbinary, and intersex people in CDCR custody in the showers of CDCR transgender hub facilities because people in custody repeatedly raised this issue in the comments of their surveys." *Id.* ¶¶ 186-187. The FAC alleges that the report "included several statements specifically from transgender women reporting safety concerns related to lack of privacy in the showers at CDCR transgender hub facilities," and noted that "[t]o transgender, nonbinary and intersex individuals, privacy is not only self-respect and personal dignity, but safety." *Id.* ¶ 189.

The FAC thus plausibly pleads moving force at this stage, alleging that "[i]f the PREA rules had been implemented at San Quentin, Plaintiff would not have been subject to repeated stalking by [inmate] Prado in the shower because Prado would not have been allowed to view Plaintiff during this time." *Id.* ¶ 196. *See Redman*, 942 F.2d at 1447; *Garcia*, 2015 WL 5998607 at * 12 (finding moving force sufficiently pled at motion to dismiss stage where plaintiff adequately alleged a connection between officers' actions and the challenged policy).

Defendants argue that the causal connection here is "too attenuated to support a moving force claim." Reply at 6. In particular, they urge that "inmate Prado's inappropriate behavior was not a plausibly foreseeable result of the lack of shower privacy; it was an intervening act by another individual that may have occurred regardless of the prison's policy." *Id.* The Court disagrees: as alleged, the harm identified in the PREA Rules—the safety risk posed by allowing cross-gender viewing in showers and elsewhere—is exactly the risk that came to pass when Plaintiff was stalked and harassed by a male inmate who was allowed to watch her shower. Given the close nexus between the violation claimed and the harm alleged, Defendants are not entitled to dismissal. Whether Plaintiff can in fact prove her claims is an issue for summary judgment or

10

trial, not the motion to dismiss stage.

## IV. CONCLUSION

The Court accordingly **DENIES** Defendants' motion to dismiss. The Court **SETS** a case management conference for Tuesday, March 7, 2023 at 2:00 p.m. The Court further **DIRECTS** the parties to submit a joint case management statement by February 28, 2023. All counsel shall use the following dial-in information to access the call:

Dial-in: 888-808-6929

Passcode: 6064255

For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties shall use landlines.

**IT IS SO ORDERED.**

Dated: 2/22/2023

*Haywood S. Gilliam Jr.*
HAYWOOD S. GILLIAM, JR.
United States District Judge

11